IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHEDRICK W. JOHNSON, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No.06-1284 |
| | ) | |
| vs. | ) | Judge Donetta W. Ambrose/ |
| | ) | Magistrate Judge Amy Reynolds Hay |
| MAGISTRATE CAROLYN S. BENGEL, and | ) | |
| KEITH DONNELLY, Allegheny County | ) | |
| Public Defender, | ) | |
| | ) | |
| Defendants | ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the complaint be dismissed before service, pursuant to the authority granted courts by the Prison Litigation Reform Act (PLRA), for failure to state a claim upon which relief can be granted.

REPORT

Shedrick W. Johnson, ("Plaintiff") is currently incarcerated at the Westmoreland County Jail, awaiting sentence. Doc. 1 at ¶ I. He seeks, under the Civil Rights Act, 42 U.S.C § 1983, to sue Keith Donnelly, an Allegheny County Assistant Public Defender, and Carolyn S. Bengel, a District Justice. Mr. Donnelly's only wrongdoing appears to be the fact that during the course of representing Plaintiff, Donnelly wrote a letter to Plaintiff saying that his bond was revoked for allegedly threatening a witness/confidential informant and that if Plaintiff was able to come up with the money required to make bond, he could then be

released.  Doc 1-1 at 4, ¶ 4.  The major wrongdoing alleged against District Justice Carolyn S. Bengel is that after Plaintiff waived his charges to the Court of Common Pleas she revoked his recognizance bond at the hearing and imposed a monetary bond and, because he was unable to immediately make that amount of bond, Plaintiff was taken into custody and remained in custody in jail until he was able to retain private counsel who obtained a bond hearing, where his bond was again modified but this time decreased to $5,000.  Because the Public Defender's office does not act under color of state law, the complaint should be dismissed as against Donnelly.  Alternatively, the Public Defender is entitled to absolute immunity from suit. Because District Justice Bengel is entitled to absolute judicial immunity, the complaint should be dismissed as to her.  In the alternative, because she was merely acting as a neutral adjudicator in revoking/setting bond, the complaint should be dismissed as against her.

### A. Relevant Facts and Procedural History

According to the complaint, Plaintiff appeared before District Justice Bengel on April 27, 2006, for a preliminary hearing in order to waive his case to Common Pleas Court.  At this hearing a confidential informant, who apparently was a witness against him in his criminal charges, testified that Plaintiff had threatened her.  Plaintiff contends that this

2

witness perjured herself.  The Allegheny County District Attorney requested that Plaintiff not be granted bail and District Justice Bengel concurred, revoking Plaintiff's recognizance bond and requiring him to post a $20,000 bond.  Apparently unable to post such a bond at that time, he was immediately arrested and taken to jail.  He then contacted a Bail Bond agency and friends, who were finalizing the steps that would be required to get him out on bond.  These attempts continued until May 2, 2006, when Plaintiff alleges that these efforts were all for nought because District Justice Bengel again revoked his bond.  When calls were made to the district justice's office, the calls were met with hostility and he was referred to his attorney, i.e., the Public Defender.  Doc. 1-1  3 - 4.

When Plaintiff did contact his attorney, Mr. Donnelley allegedly replied to him in writing and stated: "your bond was revoked because of your alleged threat to the Confidential Informant, but if you are able to come up with the money to make bail you will be released.  Good Luck."  Doc. 1-1 at 4, ¶ 4.  As a result of the reply, Plaintiff retained private counsel, who was able to obtain a bond hearing and a bond restoration. Plaintiff posted bond of $5,000 and was released from jail on June 2, 2006.  Doc. 1-1 at 4, ¶ 5.

Plaintiff alleges that the foregoing states a claim for violating his Fourth, Fifth, Eighth and Ninth Amendment rights. Doc. 1-1 at 2, ¶ III.

Although Plaintiff's complaint does not specifically reference Section 1983 of the Civil Rights Act, a liberal reading of the complaint permits an inference that Plaintiff is making his claim under the Civil Rights Act of 1871, codified at 42 U.S.C. § 1983 (Section 1983).  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir.  2001)("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983."); Pauk v. Board of Trustees of City University of New York, 654 F.2d 856 (2d Cir 1981)(where a federal statute governing civil action for deprivation of rights provides a remedy, i.e., 42 U.S.C. § 1983, an implied cause of action grounded on Constitution is not available), overruling on other grounds as recognized in, Brandman v. North Shore Guidance Center, 636 F.Supp. 877, 879 (E.D.N.Y. 1986).

The only relief Plaintiff seeks is damages and an official apology.  Doc. 1-1 at 3.

**B. Applicable Legal Principles**

In the PLRA, Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting civil rights actions

brought by prisoners, in an effort to curb the increasing number of oftentimes frivolous and harassing law suits brought by persons in custody.  See Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  The PLRA significantly amended the statutory provisions with respect to actions brought by prisoners who are proceeding in forma pauperis.  The amended version of the statute now reads that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid [by a prisoner granted IFP status], the court shall dismiss the case at any time if the court determines that–  (A) the allegation of poverty is untrue;  or  (B) the action or appeal– (i) is frivolous or malicious;  (ii) fails to state a claim on which relief may be granted;  or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).  Here, Plaintiff has been granted IFP status, and is a prisoner within the meaning of 28 U.S.C. § 1915.[1]  Thus, Section 1915(e)(2) is applicable herein.  Moreover, not only is a court permitted to sua sponte dismiss a complaint which fails to state a claim, but it is required to do so by the mandatory language of "the court shall dismiss" utilized by Section 1915(e).  See, e.g., Keener v. Pennsylvania Board of Probation and Parole, 128 F.3d 143, 145 n.2 (3d Cir.

---

[1] The term "prisoner" as used in Section 1915 means "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915(h).

1997) (describing 28 U.S.C. § 1915(e)(2)(B) as "the PLRA provision mandating sua sponte dismissal of in forma pauperis actions that are frivolous or fail to state a claim."); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000)("It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

In performing a court's mandated function of sua sponte reviewing complaints under 28 U.S.C. § 1915(e) to determine if they fail to state a claim upon which relief can be granted, a federal district court applies the same standard applied to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>See</u>, <u>e.g.</u>, <u>Powell v. Hoover</u>, 956 F. Supp. 564, 568 (M.D. Pa. 1997)(applying Rule 12(b)(6) standard to claim dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii)); <u>Tucker v. Angelone</u>, 954 F. Supp. 134, 135 (E.D. Va.) ("Under 28 U.S.C. §§ 1915A, 1915(e) and 42 U.S.C. § 1997e(c) the courts are directed to dismiss any claims made by inmates that 'fail to state a claim upon which relief could be granted'. This is the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)."), <u>aff'd</u>, 116 F.3d 473 (Table) (4th Cir. 1997).

Because under Rule 12(b)(6), courts may consider, in addition to the complaint, matters of public record and other matters of which a court may take judicial notice, <u>Oshiver v.</u>

Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994), and because the standards for dismissal for failing to state a claim under 28 U.S.C. § 1915(e) are the same as under a 12(b)(6) motion, the court may consider matters of which it may take judicial notice under 28 U.S.C. § 1915(e).  See, e.g., Lloyd v. U.S., No. 99 C 3347, 1999 WL 759375, at *1 (N.D. Ill. Sept. 3, 1999) ("As the court may take judicial notice of public records without converting a motion to dismiss to a motion for summary judgment, Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir.1994), the court will take judicial notice of court records in conducting its initial review under § 1915A.").

In reviewing complaints as mandated by 28 U.S.C. § 1915(e) and, consequently, utilizing the standards for a 12(b)(6) motion to dismiss, the complaint must be read in the light most favor-able to the Plaintiff and all well-pleaded, material allegations of fact in the complaint must be taken as true.  See  Estelle v. Gamble, 429 U.S. 97 (1976). However, the court need not accept as true any legal averments or conclusions contained in the complaint.  Papasan v. Allain, 478 U.S. 265, 286 (1986)("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."); Labovitz v. Washington Times Corp., 172 F.3d 897, 898 (D.C. Cir. 1999)(the court "need not accept purely legal

7

conclusions masquerading as factual allegations.")(some internal quotations omitted).  Neither does the court have to accept as true anything in the complaint which contradicts facts of which the court may take judicial notice.  See, e.g., Sprewell v. Golden State Warriors, 266 F.3d 979, 988(9th Cir. 2001)(In ruling on a motion to dismiss, "[t]he court need not, however, accept as true allegations that contradict matters properly subject to judicial notice. . . .").

Dismissal is proper under Rule 12(b)(6) where the court determines that the facts alleged, which are not contradicted by facts of which judicial notice may be had, taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter of law.  See, e.g., Gould Electronics, Inc. v. U.S., 220 F.3d 169, 178 (3d Cir. 2000).

Furthermore, because Plaintiff is pro se, courts accord an even more liberal reading of the complaint, employing less stringent standards when considering pro se pleadings than when judging the work product of an attorney.  Haines v. Kerner, 404 U.S. 519 (1972).

**C.  Discussion**

1.  Donnelly does not act under color of state law

In order to state a claim under 42 U.S.C. § 1983, the complaint must reveal that (1) the challenged conduct was committed by a person acting under color of state law and (2)

that the conduct infringed on Plaintiff's federal rights.  See Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Plaintiff's complaints against Keith Donnelly, the Assistant Public Defender, fail to state a claim because the acts of the Public Defender are not acts committed under color of state law as is required to state a claim under Section 1983.  See, e.g., Polk County v. Dodson, 454 U.S. 312 (1981); Henderson v. Fisher, 631 F.2d 1115, 1119 (3d Cir. 1980).

In Polk County, a convict sued his public-defender-appellate counsel who moved to withdraw as appellate counsel because the public defender concluded that an appeal would be frivolous.  The convict sued the public defender under Section 1983, claiming that her actions in moving to withdraw violated his right to counsel and, in failing to zealously advocate on his behalf, subjected him to cruel and unusual punishment and denied him due process of law.  Id. at 315.  Noting that to sustain a Section 1983 cause of action it is necessary that the complaint reveal that the defendant acted under color of state law, the court held that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.  Because it was based on such activities, the complaint against [the public defender] must be dismissed."  Id. at 325.  Likewise here, the complaint reveals liability premised only upon the Public Defender's actions or

inactions in connection with performing a lawyer's traditional functions as counsel to the criminal defendant. An attorney's failures to act, as well as his affirmative actions in the course of representing a criminal defendant fall within Polk County's ambit of "performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding" and, thus, are not accomplished "under color of state law." See, e.g., Smith v. Haith, 978 F.2d 1261 (Table), 1992 WL 311787, at *5 (7th Cir. 1992)("This principle [i.e., public defenders are not state actors] was applied in *Cornes v. Munoz*, 724 F.2d 61 (7th Cir. 1983), where a claim that a public defender was guilty of legal malpractice because of the failure to include certain claims on appeal was dismissed for failure to allege action 'under color of state law.'"), cert. denied, 507 U.S. 963 (1993). See also Williamson v. Brooks, 215 F.3d 1331 (Table), 2000 WL 431542, at *1 (7th Cir. April 21, 2000)(even allegation re overbilling and improper withdrawal as opposed to actions in connection with representation in the courtroom comes withing Polk's ambit). Indeed, even accusations of malfeasance[2] in the course of representing a criminal defendant are not enough to render the actions of the attorney cognizable in a Section 1983 suit. See

---

[2] Malfeasance is defined as "Evil doing, ill conduct. The commission of some act which is positively unlawful; the doing of an act which is wholly wrongful and unlawful. . . ." Black's Law Dictionary 862 (5th ed. 1979).

e.g., <u>Ponchik v. Kloak</u>, No. 89 C 7319, 1989 WL 134683, at *1
(N.D. Ill. Oct. 19, 1989)("allegations of malfeasance on
[attorney's] part do not give rise to a claim cognizable under
this Court's federal-question jurisdiction.").  Because the
complaint fails to allege a cause of action under Section 1983
against the Public Defender the complaint should be dismissed.

Alternatively, the complaint must be dismissed against the
Public Defender because he is entitled to absolute immunity.
The Court of Appeals for the Third Circuit has long held that
"public defenders and court appointed counsel acting within the
scope of their professional duties are absolutely immune from
civil liability under § 1983."  <u>Black v. Bayer</u>, 672 F.2d 309, 320
(3d Cir. 1982), *abrogation on other grounds recognized in,* <u>D.R.
by L.R. v. Middle Bucks Area Vocational Technical School</u>, 972
F.2d 1364 (3d Cir. 1992).  Here, the Public Defender, who simply
responded in writing to a client of his requesting assistance
with a bond issue was clearly acting within the scope of his
professional duties.  Hence, the Public Defender is entitled to
absolute immunity from suit.  Accordingly, the complaint must be
dismissed as against him.

2.  <u>District Justice Bengel is immune from suit</u>

Defendant Bengel, as a District Justice, is a judicial
officer entitled to the benefits of the doctrine of judicial
immunity.  <u>See</u>, <u>e.g.</u>, <u>Fox v. Lee</u>, 99 F.Supp.2d 573 (E.D. Pa.

11

2000)(applying doctrine of judicial immunity to district justice/magistrate).  The doctrine of judicial immunity bars civil suits for monetary damages against judicial officers who are acting in their judicial capacity, i.e., whose challenged actions are taken in the course of their judicial activities and whose actions are not lacking jurisdiction.  See Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (per curiam)("our cases make clear that the immunity is overcome only in two circumstances.  First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction.") (citations omitted).[3]  Moreover, the doctrine of judicial immunity renders a judge not only immune from damages but also immune from

---

[3]  Although Plaintiff makes an allegation that "after the revocation of my own recognizance bond and the waiver of my case to Pittsburgh Court, Justice Bengel had no more official jurisdiction in my case.  She acted outside the realm of her office when she revoked my bond a second time. . ." Doc. 1-1 at 5, ¶ 6, this court need not accept this as true given that whether a jurist acts within her jurisdiction is a legal question not a factual question.  As noted earlier, courts need not accept as true a plaintiff's legal allegations.  Essentially, Plaintiff is arguing that after a preliminary hearing has been held before a district justice, and the case is "waived" to court, i.e., found to have sufficient evidence to go on for trial in the Common Pleas Court, the district justice loses all jurisdiction over the bond. This court is unaware of any such rule.  Plaintiff is free in objections to refer the court to any such legal authority.  However, given that the court provides an alternative basis for the dismissal against Defendant Bengel, even if there were such a legal rule, it would not change the outcome.

suit.  Id. at 11 ("judicial immunity is an immunity from suit, not just from ultimate assessment of damages.").

In determining whether the challenged act is a "judicial act," the court asks two questions: (1) is the act a function normally performed by a judge and (2) did the party aggrieved by the challenged act deal with the judge in his judicial capacity. Id. at 12.  Stump v. Sparkman, 435 U.S. 349, 362 (1978)("The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.").

In this case, Plaintiff complains about District Justice Bengel's revocation of his bond a second time.  Such actions on the part of District Justice Bengel fall squarely within a function normally performed by a judge.  Thus, the first prong of the test for judicial immunity is met.  At the time District Justice Bengel either interacted with Plaintiff or affected Plaintiff, Plaintiff was dealing with her as a defendant charged with a violation of Pennsylvania law and an accused subject to bond ordered by her.  Thus, the second prong of the test for judicial immunity is likewise met here.  Morever, not even allegations that a judge took an otherwise judicial action in bad faith or maliciously is sufficient to pierce judicial immunity.

13

<u>Mireles</u>, 502 U.S. at 11 ("judicial immunity is not overcome by allegations of bad faith or malice").  Even an allegation that the judge committed an obvious procedural error is not enough. <u>Stump</u>, 435 U.S. at 358 ("a judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."). Because the allegations of the complaint regarding District Justice Bengel do not demonstrate that she is being sued for acts other than those taken in her judicial capacity, the complaint should be dismissed against her.

To the extent that Plaintiff's requested relief regarding an apology can be construed as a request for injunctive relief against District Justice Bengel, such claims for injunctive relief are likewise subject to the bar of judicial immunity. What the court held in <u>Fox v. Lee</u> is equally applicable here:

> Section 1983 precludes injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity ... unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff's complaint does not allege that either of these prerequisites to injunctive relief were met, and therefore his claim for injunctive relief is dismissed as well. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir.1999) (holding injunctive relief against a quasi-judicial official is barred if the plaintiff fails to allege a violation of a declaratory decree or the unavailability of declaratory relief); *Ackermann v. Doyle*, 43 F.Supp.2d 265, 273 (E.D.N.Y.1999) (dismissing action against judicial officers because plaintiff failed to allege that a declaratory decree was violated or that declaratory relief was unavailable); *Reilly v. Weiss*,

No. 97-CV-05883, 1998 WL 1110695, at *1 n. 3 (D.N.J. June 15, 1998)(same).

Fox v. Lee, 99 F.Supp.2d at 575-76.  Therefore, any claims for injunctive relief should be dismissed as well.

Alternatively, because Plaintiff brought his cause of action against a judicial officer pursuant to Section 1983 for her role in adjudicating his bond conditions, and state court judicial officers are not proper party defendants under Section 1983 for their adjudicatory actions, Plaintiff fails to state a claim under Section 1983.  See, e.g., In re Justices of the Supreme Court of Puerto Rico, 695 F.2d 17, 22-23 (1st Cir. 1982)("§ 1983 does not provide relief against judges acting purely in their adjudicative capacity, any more than, say, a typical state's libel law imposes liability on a postal carrier or telephone company for simply conveying a libelous message.  Just as a dismissal for failure to state a claim would be proper in the latter case, so is it in the former.  See Fed.R.Civ.P. 12(b)(6).")(citations omitted); Georgevich v. Strauss, 772 F.2d 1078, 1087 (3d Cir. 1985)(citing In re Justices approvingly). Accord Brandon E. ex rel. Listenbee v. Reynolds, 201 F.3d 194, (3d Cir. 2000)("although in *Georgevich* [where the judges there were esentially acting as a parole board] we held the judges amenable to suit under § 1983, our decision nevertheless recognized the impropriety of such suits where the judge acted as an adjudicator rather than an enforcer or administrator of a

15

statute.  Turning to the present case, the facts reveal that the plaintiffs are suing judges who are neutral adjudicators [determining under a statute, whether juveniles should be involuntarily committed to drug treatment] and not enforcers or administrators.").[4]

Accordingly, for any or all of the foregoing reasons, the complaint should be dismissed.

CONCLUSION

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
United States Magistrate Judge

Dated: 14 November, 2006

cc:  The Honorable Donnetta W. Ambrose
     Chief United States District Judge

---

[4] The rationale of the cases cited in the foregoing paragraph is not based on the common law doctrine of judicial immunity but on the concept that there is no real case or controversy existing between the adjudicator and the litigant even if the adjudicator renders adverse rulings.

16

Shedrick W. Johnson
217-02
Westmoreland County Jail
3000 South Grande Boulevard
Greensburg, PA 15601